IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SHELLY RENEE STANFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 5:17-cv-01856-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.  Introduction

The plaintiff, Shelly Renee Stanford, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Stanford timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Stanford was fifty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 357.) She has a high school education and has completed two years of college. (Tr. at 362.) Her past work experiences include

employment as a property manager, short order cook, dietary aide, and packager. (Tr. at 168, 363.) Ms. Stanford claims that she became disabled on May 30, 2014, due to a knee injury, obesity, depression, recurrent hernias, arthritis, a lower back injury, and a shoulder injury. (Tr. at 361.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI or DIB. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e).

The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination

of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. Stanford met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. at 20.) The ALJ further determined that Ms. Stanford has not engaged in SGA since the alleged onset of her disability. (*Id.*) According to the ALJ, Ms. Stanford's affective mood disorder, obesity, lumbar degenerative changes, paroxysmal atrial fibrillation status post permanent pacemaker, hernia repair, and post arthroscopy of left knee are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 21.) The ALJ determined that Ms.

Stanford has the following RFC: she can lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours and stand/walk for 6 hours in an 8-hour day; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never work at unprotected heights, around dangerous machinery, or on ladders, ramps, or stairs; perform only simple, unskilled work with an SVP of 2 or less; concentrate for 2-hour periods throughout an 8-hour day; work a 5-day workweek with customary breaks; and have only occasional contact with the general public, coworkers, and supervisors. (Tr. at 22.)

According to the ALJ, Ms. Stanford is unable to perform any of her past relevant work. (Tr. at 27.) She is an "individual closely approaching advanced age" and has "at least a high school education," as those terms are defined by the regulations. (Tr. at 28.) Considering Ms. Stanford's age, education, work experience, and RFC, and based on testimony from a vocational expert, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Ms. Stanford can perform, such as a folder of laundry, a hand packager, and an assembler. (Tr. at 28.) The ALJ concluded his findings by stating that Ms. Stanford "has not been under a disability, as defined in the Social Security Act, from May 30, 2014, through the date of this decision." (Tr. at 29.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the Commissioner's decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Stanford alleges that the ALJ's decision should be reversed and remanded for several reasons: (1) the ALJ erred in his credibility finding; (2) the ALJ erred in giving minimal weight to the July 2012 opinion of one-time consultative examining physician, Dr. Anil Dhuna, M.D.; and (3) the Appeals Council erred in denying review based on the evidence she submitted after the ALJ's denial decision.

### A. Credibility Determination

When a claimant attempts to prove disability based on her subjective complaints, she must provide evidence of an underlying medical condition and

either objective medical evidence confirming the severity of her alleged symptoms or evidence establishing that her medical condition could be reasonably expected to give rise to her alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes she has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929 (c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225-26. In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Plaintiff testified that the primary conditions preventing her from working were pain in her lower back and knees. (Tr. at 147). She alleged that she stayed in the house most of the time due to anxiety and not wanting to deal with people and that she rarely drove. (Tr. at 148, 157-58). Plaintiff also alleged that she had chronic diarrhea and that on some days she needed to be near a toilet. (Tr. at 154).

However, Plaintiff admitted that she quit her last job due to the office environment, not due to her alleged impairments. (Tr. at 146). Plaintiff also admitted that she collected unemployment benefits after her alleged onset date. (*Id.*). After the alleged onset date, Plaintiff admitted that she could lift up to 20 pounds. (Tr. at 374). She stated that she was able take care of her children and pets, prepare meals, wash laundry, clean the dishes, and dust. (Tr. at 375-76). She reported that she left the house daily, drove, and shopped for groceries 3-4 hours a week. (Tr. at 377). She was able to use the computer daily and spend time with her family. (Tr. at 378).

The ALJ properly applied the credibility standard when he evaluated Plaintiff's subjective complaints and determined that, while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, her subjective allegations were inconsistent with the mild medical evidence, the medical opinions of the state agency experts, Plaintiff's daily activities, and Plaintiff's work activity after the alleged onset date. (Tr. at 23-27).

Substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptoms in this case. First, the ALJ discussed Plaintiff's medical records, noting that they revealed mild objective findings, which did not support her claims of extreme limitations. (Tr. at 23-26). *See* 20 C.F.R. § 404.1529(c)(3)(v); SSR 16-3p; *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (a claimant's conservative

treatment history undermines her complaints of disabling pain). For example, in April 2014, the month prior to Plaintiff's alleged onset date, Plaintiff's musculoskeletal system had a normal range of motion. (Tr. at 498). The ALJ then noted that while Plaintiff injured her left knee doing yard work in June 2014, Plaintiff underwent a left knee arthroscopy with meniscectomy in September 2014 to repair her knee. (Tr. at 24, 557, 662, 1006). The ALJ noted Plaintiff underwent physical therapy and her knee condition improved. (Tr. at 24.) By October 2014, Plaintiff had normal strength and no deformity in her musculoskeletal system. (Tr. at 758). She had good range of motion in all extremities, including her left knee, and no tenderness. (Tr. at 763-64). Plaintiff reported that she was able to do cardiac and strength exercise 3-4 times a week for 45 minutes at a time. (Tr. at 852). Again in January 2015, Plaintiff reported that she was able to do cardiac and strength exercise 3-4 times a week for 45 minutes, and her extremities had no abnormalities at that time. (Tr. at 1019).

The ALJ also noted that Plaintiff underwent a procedure to address a hernia in January 2015 by Dr. Steven Sundberg. (Tr. at 24, 1028). On follow-up two weeks later, Plaintiff reported she was doing well and felt better. (Tr. at 1039). By the beginning of February 2015, Plaintiff was cleared for full activities. (Tr. at 1045).

The ALJ then noted that in May 2015, Plaintiff returned for physical therapy on her knee because she was moving to a different home and would have to do about 20 stairs daily. (Tr. at 24, 1502). The ALJ noted that Plaintiff reported that she terminated her prior physical therapy session after a limited number of sessions. (Tr. at 24, 1501). Plaintiff reported that her knee was doing well following her surgery. (Tr. at 1501). Plaintiff had normal strength and normal range of motion. (Tr. at 1213, 1362). She was still able to do cardiac and strength exercise 3-4 times a week for 45 minutes. (Tr. at 1329).

In June 2015, Plaintiff reported that she finished physical therapy, noting that her knee "continued to improve." (Tr. at 1429). She stated she was feeling better and did require any medication for pain. (Tr. at 1429). Plaintiff continued exercising at a gym. (Tr. at 1429).

Then in January 2016, Plaintiff denied arthritis, joint pain, swelling, back pain, and neck pain. (Tr. at 956). Her objective exam was normal. (Tr. at 957). In March 2016, as the ALJ noted, Plaintiff had a normal gait. (Tr. at 24-25, 1622). Again in May 2016, Plaintiff had no evidence of extremity complaints. (Tr. at 24, 1596-97).

The aforementioned mild objective treatment history provides substantial evidence supporting the ALJ's assessment of Plaintiff's subjective complaints. *See*

20 C.F.R. § 404.1529(c)(3)(iv)-(v); SSR 16-3p; *Wolfe*, 86 F.3d at 1078; *Harrison v. Comm'r of Soc. Sec.*, 569 F. App'x 874, 877 (11th Cir. 2014) (holding that the fact the claimant did not require hospital visits or emergency care suggested her symptoms could be managed with routine and conservative treatment and supported the ALJ's finding).

The opinions of two state agency non-examining medical experts also support the ALJ's decision that Plaintiff's testimony of pain was not entirely credible. State agency consultants are experts in the Social Security disability programs and their opinions may be entitled to great weight. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1527(e)(2)(i), (iii); SSR 17-2p. Mary Greenfield, M.D., and Matthew Byrnes, D.O., each independently reviewed Plaintiff's medical records in August 2014 and January 2015, respectively. (Tr. at 188, 206-08). Both Dr. Greenfield and Dr. Byrnes opined that Plaintiff had greater functional capacity than she alleged and that she could perform work consistent with the ALJ's RFC finding for light work with additional limitations. (Tr. at 186-88, 204-08). The ALJ considered these opinions and gave them weight because the opinions were consistent with the record as a whole. (Tr. at 27). *See Huntley v. Comm'r of Soc. Sec.*, 683 F. App'x 830, 833 (11th Cir. 2017) (holding that substantial evidence supported the ALJ's decision to assign the most weight to the opinion of a non-

examining physician because the non-examining physician "explained his conclusion . . . with specific reasons, and his opinion was consistent with the treatment records").

The ALJ further found that Plaintiff's self-reported daily activities were inconsistent with her extreme allegations of pain. (Tr. at 26). *See* 20 C.F.R. §§ 404.1527(c)(4), 404.1529(c)(3) (allowing for consideration of a claimant's daily activities); SSR 16-3p (same); *Dyer*, 395 F.3d at 1212 (holding that the ALJ properly relied on the claimant's daily activities). For example, Plaintiff admitted that she could lift up to 20 pounds, which is consistent with the ALJ's RFC finding. (Tr. at 374). She reported in a function report that she was able take care of her children and pets, prepare meals, wash laundry, clean the dishes, and dust. (Tr. at 375-76). Despite claiming at her hearing that she drove as little as possible, she earlier admitted that she left the house daily, drove, and shopped alone for groceries 3-4 hours a week. (*Compare* tr. at 148 *with* tr. at 377). Despite claiming at her hearing that she stayed in the house because she was afraid of being around people, earlier she admitted that she was able to go out alone. (*Compare* tr. at 157-58 *with* tr. at 377). Plaintiff was able to use the computer daily and spend time with her family. (Tr. at 378). The ALJ also noted that she was able to attend football games. (Tr. at 26, 963). As the ALJ discussed, these activities were inconsistent with Plaintiff's

allegations of extreme limitations and instead provide support for the ALJ's evaluation of Plaintiff's subjective allegations.

Plaintiff argues that the ALJ should not have relied on her daily activities because those activities did not demonstrate that she could perform the rigors of a job for eight hours a day, relying upon the Eleventh Circuit's statement that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability . . ." *Lewis v. Callahan*, 25 F.3d 1346, 1441 (11th Cir. 1997). However, the ALJ did not rely on Plaintiff's self-reported daily activities to definitively prove that Plaintiff was not disabled or that she could perform those activities for eight hours at a time. Rather, the ALJ properly considered Plaintiff's activities along with the other evidence in accordance with the regulations, SSR 16-3p, and Eleventh Circuit case law. *See, e.g.*, 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p; *Dyer*, 395 F.3d at 1212.

The ALJ further noted that Plaintiff's work activity after the alleged onset date was inconsistent with her claims of disabling pain. (Tr. at 26). For example, despite Plaintiff's claim that she did not go out in public and drove infrequently, she was able to drive a cab part-time after the alleged onset date. (Tr. at 26, 148, 157-58, 659, 1347, 1570). *See* 20 C.F.R. § 404.1571 ("work . . . that you have done during any period in which you believe you are disabled may show that you are able

to work at the substantial gainful activity level"); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013) ("Even if a claimant's current employment status is not at the level of SGA, it may indicate that she is able to do more work."); *Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012) (noting claimant testified he had been working during period of alleged disability, "possibly indicating that he was able to perform substantial gainful activity," citing 20 C.F.R. § 404.1571).

Moreover, during her hearing, Plaintiff admitted that she left her last job on the alleged onset date due to reasons unrelated to her impairments. (Tr. at 146). After leaving that position, Plaintiff admitted that she collected unemployment benefits during the relevant period, which certified that she was ready, willing, and able to work. (Tr. at 145-46). *See Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994) ("[I]n order to be eligible for unemployment benefits, Barrett was required to sign documents stating that he was capable of working and seeking work. This statement is clearly inconsistent with [claimant's] claim of disability during the same period."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)(finding applications for unemployment and disability benefits are inherently inconsistent); *see also Bowden v. Comm'r of Soc. Sec.*, No. 97-1629, 1999 WL 98378, at *7 (6th Cir. Jan. 29, 1999) (finding "no reasonable explanation for how a person can claim

disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work.").

Plaintiff also argues that the ALJ did not properly consider her allegations of chronic diarrhea that caused her to stay near the bathroom on some days. However, the ALJ noted that Plaintiff alleged that she had chronic diarrhea related to diverticulitis, but that she submitted no evidence to support these allegations. (Tr. at 23, 26). In fact, Plaintiff's medical records frequently noted that she had no diarrhea. (Tr. at 657, 931, 940, 956, 1049, 1382, 1388, 1399, 1404, 1412). Plaintiff also takes issue with the ALJ's treatment of her complaints about her hernias, but the ALJ discussed Plaintiff's hernia impairment and found that it limited her to a reduced range of light work, which is consistent with Plaintiff's allegation that she was limited to lifting 20 pounds. (Tr. at 374). Insofar as Plaintiff is essentially asking this Court to re-weigh the evidence to find that she was further limited than the ALJ found, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Dyer*, 395 F.3d at 1210; *Phillips*, 357 F.3d at 1240 n.8. The relevant inquiry is not whether some evidence might support greater limitations, but whether substantial evidence supports the ALJ's decision. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (even if

evidence preponderates against the ALJ's decision, courts must affirm if substantial evidence supports it).

In sum, the ALJ thoroughly considered the evidence, and the evidence discussed above provides substantial evidence for the ALJ's credibility finding.

## B.     Weight to Opinion of Consultative Examiner

The ALJ must articulate the weight given to different medical opinions in the record and the reasons therefore. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The weight afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Within the classification of acceptable medical sources are the following different types of sources that are entitled to different weights of opinion: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting

physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is a "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . .." 20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). As such, the opinions of one-time examiners are not entitled to any special deference or consideration. *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme v. Comm'r*, 518 F. App'x 875, 877 (11th Cir. 2013) (holding that the ALJ does not have to defer to the opinion of doctor who conducted a single examination and who was not a treating doctor). Importantly, however, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Ms. Stanford was examined by Dr. Dhuna on July 2, 2012, as part of a previous Social Security disability benefits application. (Tr. at 486). Dr. Dhuna is board certified in neurology, sleep medicine, neurorehabilitation and clinical neurophysiology. (*Id.*) At the examination Plaintiff described having low back pain, left leg fatigue, and left hip pain that turns into burning from her knee down. (*Id.*) The physical examination was normal except for the notation that Plaintiff's weight was 340 lbs. with a body mass index ("BMI") of 56.6. (*Id.*) Dr. Dhuna stated that Plaintiff "would have difficulty with standing, sitting, and stooping for an 8 hour shift due to her obesity complicating recurrent hernias and low back pain. She should have no problems handling cash, seeing or hearing." (Tr. at 489).

Substantial evidence supports the ALJ's decision to afford minimal weight to Dr. Dhuna's opinion. First, Dr. Dhuna's opinion predated Plaintiff's alleged disability onset date by two years. (Tr. at 27). *See Santos v. Comm'r of Soc. Sec.*, 731 F. App'x 848, 856 (11th Cir. 2018) (holding the ALJ properly granted treating opinions little weight because the opinions were of "limited relevance to Santos's claims because they predated her alleged disability date"); *see also Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1296 n.4, 1303 n.9 (S.D. Fla. 2012) (explaining that medical records from before relevant period where of "limited relevance" or were "not relevant to her current disability application"). In fact, following Dr. Dhuna's

opinion, Plaintiff was able to work full time, not quitting until the alleged onset date for reasons unrelated to her impairments. (Tr. at 146, 343, 363). The outdated nature of Dr. Dhuna's opinion provides substantial evidence supporting the ALJ's finding.

Second, Dr. Dhuna's opinion was conclusory, failing to support its conclusions with objective examination notes. (Tr. at 27). As the ALJ noted, the only definite portion of Dr. Dhuna's opinion was that Plaintiff could handle cash, see, and hear. (Tr. at 27, 489). *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 740-41 (11th Cir. 2018) (holding that the ALJ articulated good cause, supported by substantial evidence, for assigning a treating opinion little weight when the ALJ found the opinion was conclusory). Thus, the conclusory nature of Dr. Dhuna's opinion provides further support for the ALJ's finding.

Third, Dr. Dhuna's opinion was inconsistent with Plaintiff's mild medical evidence from the relevant period, as discussed in the previous section. (Tr. at 27). *See* 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *Wolfe*, 86 F.3d at 1078

(holding that a claimant's conservative treatment history supports the ALJ's decision); *Schuhardt v. Astrue*, 303 F. App'x 757, 759- 60 (11th Cir. 2008) (holding that the ALJ properly gave little weight to a treating physician's opinion in part because the physician's treatment records revealed that the claimant received good relief with medication).

Plaintiff argues that the ALJ should have granted Dr. Dhuna's opinion greater weight than the opinions of Dr. Greenfield and Dr. Byrnes because Dr. Dhuna had a greater specialty and actually examined Plaintiff. However, Plaintiff's argument is without merit. Although the opinion of an examining doctor generally will receive more weight than the opinion of a doctor who did not examine the claimant, *see* 20 C.F.R. § 404.1527(c)(2), the regulations establish that examining relationships and specialty are only two of many factors that an adjudicator considers when weighing medical opinions. *See* 20 C.F.R. § 404.1527(c). Indeed, opinions of non-examining sources may override opinions from treating or examining sources, provided evidence in the record supports the non-examining source's opinion. *See* 20 C.F.R. §§ 404.1527(c), (e); 416.927(c), (e); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 872-74 (11th Cir. 2011) (concluding that ALJ properly gave more weight to non-examining consultants' opinions over a treating physician's opinion). This is especially true in this case, where the experts'

opinions were consistent with the evidence, while Dr. Dhuna's opinion was conclusory and dated two years prior to Plaintiff's alleged onset date, Plaintiff was able to work full time after Dr. Dhuna's opinion, and Dr. Dhuna's opinion was inconsistent with the mild objective medical evidence from the relevant period.

Plaintiff also contends that the ALJ was required to further develop the record by re-contacting Dr. Dhuna because he found that the opinion was vague. However, the regulations merely provide that if the evidence is insufficient to determine whether the claimant is disabled or the adjudicator cannot reach a conclusion about whether the claimant is disabled, the adjudicator "may" re-contact a claimant's treating physician or order a consultative examination. *See* 20 C.F.R. § 404.1520b(c)(1), (c)(3). The regulations do not mandate re-contacting a physician. In fact, as discussed above, the file had sufficient evidence to determine that Plaintiff was not disabled. Moreover, although an ALJ "has a basic obligation to develop a full and fair record, . . . there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Plaintiff has not shown that not re-contacting Dr. Dhuna resulted in an unfair proceeding or clear prejudice. Indeed, Plaintiff had the option of obtaining an opinion from Dr. Dhuna

and submitting it to the Appeals Council for review, but she and her representatives did not. *See* 20 C.F.R. § 404.976.

Accordingly, substantial evidence supports the ALJ's evaluation of Dr. Dhuna's opinion.

### C.    Appeals Council's Review

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). However, "[t]he Appeals Council must consider new, material and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b). The new evidence is material if "it is relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). It is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). When considering the Appeals Council's denial of review, a reviewing court considers such new evidence, along with all the other evidence in

the record, to determine whether substantial evidence supports the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Ingram*, 496 F.3d at 1266.

The ALJ issued his decision on October 12, 2016. (Tr. at 29.) Plaintiff subsequently submitted three general categories of new evidence to the Appeals Council: (1) hospital records from Cullman Regional Medical Center ("CRMC") for emergency treatment for rapid heart rate on October 24, 2016 and December 12, 2016; (2) cognitive behavioral therapy visits with therapist Melanie Campbell in October and November 2016; and (3) a "Summary of Treatment" by psychiatrist Dr. Karis D. Knight. (Tr. at 37-76, 77-83, 84, 85-128). Plaintiff now argues that this evidence concerning medical examinations from after the ALJ's decision warranted remand because the exams show she had greater psychological and cardiac limitations than found by the ALJ.

More specifically, Ms. Stanford sought emergency treatment at CRMC for her rapid heart rate on October 24, 2016, several weeks after the ALJ's decision. (Tr. at 92-128). While at CRMC, her heart rate converted to normal sinus rhythm prior to being administered Cardizem. (Tr. at 95). She was discharged home after her heart returned to normal sinus rhythm. Ms. Stanford returned for emergency care for heart palpitations on December 12, 2016. (Tr. at 67). Her symptoms included shortness of breath, lightheadedness and mid-sternal pain. She received

three doses of adenosine to convert her heart back to normal sinus rhythm. Eventually, taking Cardizem restored her heart rate to normal sinus rhythm. Ms. Stanford was discharged on December 15, 2016. (Tr. at 75). Her attending physician changed her medication and opined that Plaintiff will need ablation to avoid rapid heart rate. (*Id.*)

Plaintiff also began therapy on October 20, 2016, with Melanie Campbell at Turnaround Counseling. (Tr. at 83). Ms. Campbell diagnosed her with major depression–moderate. Ms. Campbell's opinion was that treatment would improve her coping, emotional eating, and depression. Ms. Stanford received individual counseling on October 26, November 1, November 8, and November 29, 2016. (Tr. at 76-82). Ms. Campbell's opinion was that therapy would be long-term but that Plaintiff was making gradual progress. (Tr. at 78).

Finally, Ms. Stanford also submitted a medical source opinion letter dated December 7, 2016, from Dr. Karis D. Knight, M.D., concerning her psychiatric care of Ms. Stanford after the ALJ's decision. (Tr. at 84). Dr. Knight's letter states in part: "[Plaintiff's] anxiety and her heart conditions impact each other and her ability to perform [activities of daily living] including work." (*Id.*).

The Appeals Council stated in its denial of review that all of this evidence related to a later period, and that there is no indication that it reflected Plaintiff's condition as it existed at the time of consideration in the appeal. (Tr. at 2).

Plaintiff admits that all of this treatment occurred after the ALJ's decision but argues that it is nonetheless chronologically relevant because it concerns treatment of conditions that she had prior to the decision. She contends that the emergency room visits contradict the ALJ's determination that her atrial fibrillation was controlled by taking certain medications because her attending physician changed those medications, that her mental health counseling sessions document a worsening of her mental condition requiring ongoing therapy, and that the statement from Dr. Knight proves the interrelationship of her anxiety and heart problems.

While Plaintiff relies upon *Washington v. Social Security Administration*, 806 F.3d 1317 (11th Cir. 2015), in which the Eleventh Circuit stated that "medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant," the case is distinguishable. In *Washington*, the claimant submitted to the Appeals Council a psychologist's evaluation and accompanying opinion about the degree of the claimant's mental limitations, which were prepared seven months after the ALJ's decision. *Id.* at 1319-20. The court concluded that the

psychologist's materials were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision. *Id.* at 1319, 1322-23 (limiting its holding to "the specific circumstances of this case"). The Eleventh Circuit has recently declined to extend its holding beyond *Washington* in several cases. *See*, *e.g., Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309-10 (11th Cir. 2018) (distinguishing *Washington* because "nothing in these new medical records indicates the doctors considered Hargress's past medical records or that the information in them relates to the period at issue," and because, even assuming they were chronologically relevant, they were not material because there was no reasonable possibility that they would change the administrative result).

In this case, like in *Hargress*, the Appeals Council did not decline to consider the new evidence but rather found that the evidence was not chronologically relevant. (Tr. at 2). Indeed, all of the evidence postdates the ALJ's decision and does not purport to relate back to the relevant period, despite Plaintiff's attempts to relate them back. Further, these records were not based on a review of Plaintiff's prior medical records, nor did the physicians state that Plaintiff's condition at the

time of the exam existed during the relevant period. With regard to Dr. Knight's opinion specifically, it is also a conclusory statement on an issue reserved for the Commissioner and thus merits no weight. *See Lewis*, 125 F.3d at 1440 ("we note that we are concerned here with the doctors' evaluations of Lewis's condition and the medical consequences thereof, not their opinions of the legal consequences of his condition."). Dr. Knight simply opined that Plaintiff deserved disability benefits and that her anxiety affected her daily activities. (Tr. at 84). Moreover, not only was Dr. Knight's opinion from after the ALJ's decision, Dr. Knight did not start treating Plaintiff until after the ALJ's decision, and Dr. Knight did not state that she reviewed any of medical evidence from the relevant period. (*Id.*).

Thus, these records were not chronologically relevant, and the Court finds no error in the Appeals Council's denial of review.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Stanford's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. A separate order will be entered.

**DONE** and **ORDERED** on March 27, 2019.

_____

L. Scott Coogler
UNITED STATES DISTRICT JUDGE

160704